UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 06-2119 (RCL) |
| | ) | |
| DIRK KEMPTHORNE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MOTION TO DISMISS**

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendants Dirk Kempthorne and H. Dale Hall

move this Court to dismiss Plaintiff's Complaint For Declaratory and Injunctive Relief for the

reasons stated in the accompanying Memorandum.

Respectfully submitted this 29th day of March, 2007.

Respectfully submitted,

MATTHEW J. McKEOWN
Acting Assistant Attorney General

LISA RUSSELL
Assistant Section Chief

/s Robert L. Gulley
_____

ROBERT L. GULLEY
Senior Trial Attorney
Wildlife & Marine Resources Section
Benjamin Franklin Station, P.O. Box 7369

Washington, DC 20044-7369
(202) 305-0500 (ph)
(202) 305-0275 (fx)
robert.gulley@usdoj.gov

***Attorneys for Defendants***

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


CENTER FOR BIOLOGICAL DIVERSITY,  )
                                  )
                   Plaintiff,     )
                                  )
         v.                       )          Civil No. 06-2119 (RCL)
                                  )
DIRK KEMPTHORNE, *et al*.,         )
                                  )
                   Defendants.    )
_____   )


**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

On December 14, 2006, Plaintiff filed its Complaint alleging that the Department of

Interior and United States Fish and Wildlife Service ("FWS") had unreasonably delayed in

granting or denying a rulemaking petition filed by Plaintiff.  The petition requested FWS to

revise the experimental population rule for the reintroduction of the Mexican gray wolf

("Mexican wolf") into the wild in Arizona and New Mexico promulgated pursuant to § 10(j) of

the Endangered Species Act ("ESA") (the "10(j) Rule").  On February 8, 2006, FWS responded

to that petition and notified Plaintiff that FWS had already started the process to modify the 10(j)

rule.[1]

_____

[1]    Declaration of John Morgart ("Morgart Decl."), Ex. 1 (Letter from Regional Director,
FWS Region 2 to Michael Robinson, Center for Biological Diversity, dated, February 8, 2007).
The three other Exhibits to Dr. Morgart's declaration are documents from FWS' administrative
record referenced in the February 8, 2007 letter.  Although the Court may in appropriate cases
dispose of a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1)
on the complaint standing alone, the Court may consider the complaint supplemented by
undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus
the court's resolution of disputed facts. *Coalition for Underground Expansion v. Mineta*, 333

As set out below, Plaintiff's case is now moot. Accordingly, pursuant to Rule 12(b)(1), Fed. R. Civ. P., Defendants move this Court to dismiss Plaintiff's Complaint For Declaratory and Injunctive Relief.

## I.    BACKGROUND

### A.    The 10(j) Rule For The Mexican Wolf

Section 10(j) of the ESA authorizes the Secretary of Interior to "authorize the release ... of any population ... on an endangered species or a threatened species outside the current range of such species." 16 U.S.C. § 1539(j)(2)(A). Such designated populations are referred to as "experimental" populations. 50 C.F.R. § 17.80. The designation of experimental populations must be by a rule promulgated pursuant to § 553 of the Administrative Procedure Act, 5 U.S.C. § 553. 50 C.F.R. § 17.81. The rules designating experimental populations are referred to as 10(j) rules. Those rules are codified at 50 C.F.R. § 17.84.

On January 12, 1998, FWS promulgated a 10(j) rule for the Mexican wolf. *See* 50 C.F.R. § 17.84(k).[2] On March 29, 1998, captive-reared Mexican wolves were released to the wild for

---

F.3d 193, 198 (D.C. Cir. 2003).

[2]    The 10(j) rule created a Mexican Wolf Experimental Population Area covering a large part of Arizona and New Mexico. 50 C.F.R. § 17.84(k)(9). Within the experimental area, the rule established two recovery areas, the Blue Range Recovery Area ("BRWRA") and the White Sands Wolf Recovery Area. *Id.*, § 17.84(k)(9)(i), (ii). The 10(j) rule authorized FWS to release captive Mexican wolves into the "primary recovery zone" in the BRWRA. *Id.* § 17.84(k)(15) (deinition of "primary recovery zone"). The rule did not authorize the release of captive wolves into the "secondary recovery zone." *Id.* (Definition of "secondary recovery zone"). Under the 10(j) rule, if a member of the experimental population is found outside of the designated recovery area, but inside the experimental area, FWS must either capture and re-release the wolf within the recovery area, return the wolf to captivity, or otherwise manage the wolf according to provisions of a FWS-approved management plan. *Id.* § 17.84(k)(9)(iii).

the first time in the Blue Range Wolf Recovery Area.  The 10(j) rule for the Mexican wolf

required FWS to evaluate the progress of the reintroduction effort and, after the third and fifth

years, to prepare a full evaluation and  "recommend continuation, modification, or termination of

the reintroduction effort."  *Id.* at § 17.84(k)(13).  The FWS completed the initial 3-year

evaluation in August 2001.

In 2001, FWS received Congressional direction to further review the 3-year Review.  In

August 2002, at FWS' request, the states of Arizona and New Mexico agreed to conduct the

independent review requested by Congress.  This independent review was completed in

September 2002.  As a result of that independent review, FWS formed a Mexican Wolf Adaptive

Management Oversight Committee ("AMOC") consisting of the Arizona Game and Fish

Department, New Mexico Department of Game and Fish, U.S. Department of Agriculture-Forest

Service, U.S. Department of Agriculture-Wildlife Services, White Mountain Apache Tribe as

Lead Agencies, and New Mexico Department of Agriculture, and Greenlee County as

Cooperators.  Complaint ("Compl."), ¶ 33.  Under this structure, the Arizona and New Mexico

State Game and Fish Departments and the White Mountain Apache Tribe have lead

responsibility for implementing the Blue Range Wolf Recovery Area Reintroduction Project in

their respective jurisdictions, while FWS remains responsible for overall Mexican wolf recovery.

The relative roles of the various agencies were memorialized in a Memorandum of

Understanding in October 2003 ("2003 MOU").

In 2004, FWS initiated the 5-year Review in collaboration with the other members of the

AMOC.  A draft of the 5-year Review was released for public comment in December 2004.  The

AMOC completed the 5-year Review on December 31, 2005.  Compl., ¶ 34.  The 5-year Review

recommended continuation of the reintroduction project and made 37 recommendations for

modification of the project including 10 which pertain to the modification of the 10(j) rule.  The

recommended modifications would allow, as requested in Plaintiff's petition, wolves to disperse

outside of the recovery area and the initial release of captive born and reared wolves in the

secondary recovery area.  Compl., ¶ 34.

On July 25, 2006, FWS indicated to the AMOC that it would "move forward in further

assessing and implementing" the 37 recommendations contained in the 5-year Review.  *See*

Morgart Decl., Ex. 2.

On October 10, 2006, the Acting Assistant Regional Director of FWS Region 2

recommended the initiation of the process to modify the 10(j) rule and to prepare the requisite

National Environmental Policy Act ("NEPA") documentation.  Morgart Decl., Ex. 2.  The

Regional Director concurred with that recommendation.  *Id.*, Ex 1.

On December 5, 2006, FWS signed an amendment to the 2003 MOU to cooperatively

prepare appropriate NEPA documentation analyzing alternatives for a proposed rule that "might

designate a new Mexican Wolf Experimental Population Area (MWEPA) and alter some aspects

of currently authorized regulations for management of the Mexican wolf."  Morgart Decl., Ex. 3

at 1.  The MOU contemplates that a draft Environmental Impact Statement ("EIS") and draft

10(j) rule will be published, followed by a final EIS, Record of Decision and final 10(j) Rule.  *Id.*

at 2-3.

On January 29, 2007, FWS amended ESA § 6 grants, 16 U.S. C. § 1535, to the Arizona Game and Fish Department and New Mexico Department of Game and Fish for the Mexican wolf by $128,000 to fund the preparation of the scoping document for the EIS and 10(j) rule modification.  Morgart Decl., Ex 4.

On February 8, 2007, FWS responded to Plaintiff's petition and notified Plaintiff that it had already started the process of preparing the modified 10(j) rule.  Morgart Decl., Ex. 1.  In that letter, FWS explained that it will consider "expansion of recovery area boundaries" consistent with the AMOC's recommendations in the 5-year Review.  *Id.*

### B.      Plaintiff's Claim

On March 29, 2004, Plaintiff petitioned FWS to amend the 10(j) rule.  Compl., 29.  The petition sought modifications of the rule to allow the release of captive Mexican wolves into the secondary recovery zone, to allow wolves to establish territory outside the boundaries of the Blue Range Wolf Recovery Area, and to define "nuisance" and "problem" wolves to exclude animals that scavenge on the carcasses of livestock that die of non-wolf causes.  Compl., ¶ 31. Plaintiff contends that these modifications were warranted by the recommendations of the 3-year Review.  *Id.*

Plaintiff's Complaint asserts that FWS' "refusal in well over two years to reach a decision on the Center's March 29, 2004 Petition ... constitutes agency action 'unreasonably delayed,' in violation of the Administrative Procedure Act ('APA'), 5 U.S.C. § 706(1)."  Compl.,

5

¶ 1.  Plaintiff identifies that its alleged injury stems from FWS' "delay in acting on the Center's Petition."[3]  Compl., ¶ 5.  Plaintiff makes clear that its interest is only in receiving a decision, not a particular decision.  *Id.* (making clear that its alleged injuries would be addressed "[i]f the Service were to grant the Center's Petition and modify the rule in any or all of the respects requested by the Center..." or "[e]ven if the Service were to deny the Center's Petition...").  Indeed, for relief, Plaintiff seeks only to have this Court order FWS to issue a decision on its petition within 45 days. Compl. at 16.

## II.    ARGUMENT

Plaintiff alleges that it has been injured by FWS's failure to make a decision regarding its rulemaking petition.  FWS made that decision and notified Plaintiff of its decision on February 8, 2007.  Thus, Plaintiff has received the relief that it sought - - a decision on its rulemaking petition.  Its action is now moot and must be dismissed.

"The inability of the federal judiciary 'to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'"  *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (citations omitted).  A Federal court does not have jurisdiction "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."  *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992).

---

[3]     *Clarke v. United States*, 915 F.2d 699, 703 (D.C. Cir. 1990) ("[W]here plaintiffs are resisting a mootness claim we think they must be estopped to assert a broader notion of their injury than the one on which they originally sought relief.").

Accordingly, moot cases must be dismissed for lack of jurisdiction. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-79 (1990); *Clarke v. United States*, 915 F.2d at 701 (a case must be dismissed if it appears that it is moot at any stage in the litigation).

A claim is moot if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990). The D.C. Circuit explained further that a case is moot if "intervening events make it impossible to grant the prevailing party effective relief." *Burlington Northern R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 688 (D.C. Cir. 1996) (citing *Church of Scientology*, 506 U.S. at 11)); *Friends of Keeseville, Inc. v. FERC*, 859 F.2d 230, 232 (D.C. Cir. 1988) (challenges to decision granting permit is moot because plaintiff "suffers no continuing judicially remediable injury"). Plaintiff's Complaint identifies the action that was 'unreasonably delayed' to be FWS' refusal to reach a decision on Plaintiff's petition" Compl., ¶ 1. It explains that the "interests of the Center and its members are impaired by the Service's delay in acting on the Center's Petition." Compl., ¶ 5. The only relief Plaintiff seeks is to have this Court issue a final decision on its petition within 45 days.[4] Compl. at 16.

Even before this case was filed, FWS determined that it would initiate the process to modify the 10(j) rule to consider designating a new Mexican Wolf Experimental Population Area

_____

[4]    Plaintiff also requested an award of attorney's fees as part of the relief it seeks, Compl. at 16; however, a request for attorneys' fees does not preserve a case which is otherwise moot. *Friends of Keeseville, Inc.*, 859 F.2d at 233 (citing *Monzillo v. Biller*, 735 F.2d 1456, 1463 (D.C. Cir. 1984)).

and other recommendations of the 5-year Review. *See* Morgart Decl., Exs. 2 and 3. It has

already funded New Mexico and Arizona to initiate public scoping for the NEPA and

rulemaking process. *See* Morgart Decl., Ex 4. Thus, Plaintiff has received the decision that it

alleged in its Complaint was "unreasonably delayed." The alleged cause of Plaintiff's injury has

been removed, and the only relief sought by Plaintiff has been provided. Any determination now

regarding whether FWS unreasonably delayed its decision on the Plaintiff's rulemaking decision

would be purely advisory.[5] Thus, Plaintiff's case is now moot. Accordingly, Plaintiff's

Complaint must be dismissed for lack of jurisdiction.

      Respectfully submitted this 29th day of March, 2007.

                    Respectfully submitted,

                    MATTHEW J. McKEOWN
                    Assistant Attorney General

                    LISA RUSSELL
                    Assistant Section Chief

                    /s Robert L. Gulley
                    _____

                    ROBERT L. GULLEY
                    Senior Trial Attorney
                    Wildlife & Marine Resources Section
                    Benjamin Franklin Station, P.O. Box 7369
                    Washington, DC 20044-7369

---

[5] The fact that no date has been set to publish the proposed modified rule or the possibility that the final rule might not be fully consistent with Plaintiff's request do not change the fact that the decision that Plaintiff sought in this case has been made. The resolution of those hypothetical problems are simply not ripe for adjudication at this time. *Action on Smoking and Health v. Department of Labor*, 28 F.3d 162, 164 (D.C. Cir. 1994).

(202) 305-0500 (ph)
(202) 305-0275 (fx)
robert.gulley@usdoj.gov

***Attorneys for Defendant***

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of Defendants' Motion to Dismiss, Memorandum in Support of Their Motion to Dismiss, and the Declaration of John Morgart with Exhibits were served on counsel for Plaintiff, on March 29, 2007, by filing the motion on this Court's electronic filing system

_____/s/_____

Robert L. Gulley

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL DIVERSITY,    )
                                    )
                Plaintiff,          )
                                    )
        v.                          )        Civil No. 06-2119 (RCL)
                                    )
DIRK KEMPTHORNE, et al,             )
                                    )
                Defendant.          )
_____)

### DECLARATION OF JOHN MORGART

Pursuant to 28 U.S.C., Section 1746, I, John Morgart, state as follows:

1. I am the Mexican Gray Wolf Recovery Coordinator (Coordinator) for Region 2, of the U.S. Fish and Wildlife Service (Service), an agency of the U.S. Department of the Interior, located in Albuquerque, New Mexico. As Coordinator, I am responsible to the Regional Director of Region 2 of the Fish and Wildlife Service and to the Secretary of the Interior for the administration of the Mexican Gray Wolf Program.

2. I have worked as a biologist for twenty-nine years. From 1978-1985 I worked for the Bureau of Land Management as a Range Conservationist. From 1985-1987 I worked for the Bureau of Reclamation as a biologist. From 1987-1999 I was the Supervisory Wildlife Biologist on the Yukon Delta National Wildlife Refuge in Alaska. From 1999-2004 I served as the Sonoran Pronghorn Recovery Coordinator at Cabeza Prieta National Wildlife Refuge. I received a Bachelors of Science in Wildlife Biology from Arizona State University in 1974, a Masters of Science in Zoology from Arizona State University in 1978, and a Ph.D. in Wildlife Ecology from the University of Arizona in 1990.

3. I am familiar with the complaint filed by Plaintiff in the above-captioned matter.

4. On February 8, 2007, the Regional Director, Dr. Benjamin N. Tuggle sent a letter to the Plaintiff in this case. A true and accurate copy of that letter is attached hereto as Exhibit 1. That letter responded to Plaintiff's March 29, 2004 "Petition for Rule-making." Several documents that are part of the Service's administrative record were referenced in that letter. A true and accurate copy of those documents are attached hereto as exhibits 2-4.

A. On October 10, 2006, the Regional Director concurred with a memorandum recommending a revision of the Rule Establishing a Nonessential Experimental Population of the Mexican Gray Wolf in Arizona and New Mexico. 63 Fed. Reg. 1752 (1998) (Rule). Exhibit 2

B. By signing the October 10, 2006 memorandum, the Service set in motion an amendment of the 2003 Memorandum of Understanding (MOU) between the Service and members of the Mexican Wolf Adaptive Management Oversight Committee (AMOC). The amendment of the 2003 MOU allowed the Service to cooperate with AMOC members to revise

the Rule.  A revision of this rule will require compliance with the National Environmental Policy Act (NEPA).  Exhibit 3.

   C.  In order to begin the NEPA process, the Service increased Federal funding of an Endangered Species Section 6 Grant for "Mexican Wolf Conservation" by $128,000 as evidenced by letters sent to the directors of the New Mexico Department of Game and Fish and Arizona Game and Fish Department.  Exhibit 4.

  I declare under penalty of perjury that the foregoing is true and correct.  Executed on March 28, 2007.

       John Morgart
       Mexican Gray Wolf Program Coordinator
       U.S. Fish and Wildlife Service



# United States Department of the Interior

## FISH AND WILDLIFE SERVICE

P.O. Box 1306
Albuquerque, New Mexico 87103
http://ifw2es.fws.gov

In Reply Refer To:
R2/ES-TE/MWRP
CL 1-25

*CERTIFIED MAIL - RETURN RECEIPT REQUESTED*

**FEB 0 8 2007**

Mr. Michael Robinson
Center for Biological Diversity
P.O. Box 53166
Pinos Altos, New Mexico  88053

Dear Mr. Robinson:

On or about March 29, 2004, this office received your "Petition for Rule-making" (Petition).  In that Petition, you asked the U.S. Fish and Wildlife Service (Service) to revise the Rule, promulgated pursuant to Section 10(j) of the Endangered Species Act, which established a nonessential, experimental population of the Mexican Gray Wolf in Arizona and New Mexico. In particular, you encouraged us to make revisions based upon a 3-year review of the Service's Mexican Gray Wolf Program (Program).

We responded to your petition in a letter, dated June 30, 2004.  Since you did not consider that response to be sufficient, we offer this second response to and decision regarding your petition. In addition to the referenced 3-year review, a 5-year review of the Program was required by the 10(j) rule, and the 5-year review is complete.  In response to your petition and pursuant to the findings of the 5-year review, we are taking the following actions:

1. Subject to the availability of funds, the Service has started the process to modify the 10(j) rule to establish a nonessential, experimental population of the Mexican Gray Wolf.  At this time, we cannot commit to what changes, if any, will be made because potential modifications will be subject to the rule-making process and public input.

2. As of July 25, 2006, the Service, with input from the Mexican Wolf Adaptive Management Oversight Committee (AMOC) and other partners, has committed to formally consider modifications requiring formal rule changes, including expansion of recovery area boundaries that are under Federal jurisdiction.  This will be done in compliance with applicable Federal laws, policies, and procedures; will include substantial public review; and will be contingent upon available funding.

3. As of July 2006, it is the Service's position that pursuant to the AMOC 5-year review recommendations, the Mexican Wolf Blue Range Reintroduction Project will continue with

Mr. Michael Robinson                                                                              2

modifications. AMOC's recommendation to expand the 10(j) boundary of the Mexican wolf recovery area will require a formal rule change and could take up to 3 years to complete, subject to available funding.

4.  On October 10, 2006, the Acting Assistant Regional Director of Region 2, for the Service, recommended to the Regional Director of the Service the initiation of a revision of the 10(j) rule and the initiation of the requisite National Environmental Policy Act (NEPA) process. The Regional Director concurred with the recommendation.

5.  In December 2006, the Service signed an amendment to the 2003 Memorandum of Understanding (MOU) with AMOC members. The MOU sets the stage for the Service to cooperate with AMOC members to prepare a proposed revision of the 10(j) rule and complete required NEPA documents.

6.  The Service has obligated $126,000 in a contract with the Arizona Game and Fish Department and New Mexico Department of Game and Fish for initiating the scoping process for an environmental impact statement (EIS) for a potential formal 10(j) rule change. The State agencies have matched 10 percent of this amount.

7.  The Service is actively looking for additional sources of funds to pursue a proposed revision of the 10(j) rule.

If you have questions regarding the information found in this letter, please contact John Morgart at 505-761-4748.

Sincerely,

ACTING Regional Director

Mr. Michael Robinson                                                          3

cc:   Brian Millsap, New Mexico State Administrator, U. S. Fish and Wildlife Service,
       Albuquerque, NM
       Wally Murphy, Field Supervisor, New Mexico Ecological Services Field Office,
       Albuquerque, NM

8 −1

October 6, 2006

**DECISION MEMORANDUM FOR THE REGIONAL DIRECTOR**

**FROM:** Brian Millsap, State Administrator, New Mexico Ecological Services Field Office

**TELEPHONE:** 505-248-6587

**SUBJECT:** Modification of the Mexican Gray Wolf Non-essential Experimental Population

**I.   STATEMENT OF THE ISSUE**
The U.S. Fish and Wildlife Service (Service) has stated its intentions to explore the process of revising the existing Mexican wolf non-essential experimental population regulations, pursuant to section 10(j) of the Endangered Species Act (ESA), including development of an Environmental Impact Statement (EIS) pursuant to the National Environmental Policy Act (NEPA), in cooperation with Federal and non-Federal partners.  The Service can demonstrate its commitment to initiating this activity by signing a Memorandum of Understanding (MOU) that delineates the roles and responsibilities of all lead and cooperating parties in the NEPA and rule-making process; determining funding mechanisms; working with cooperating parties to develop a work schedule that defines staffing and contract needs, and time frames for completion of all components of the process; and coordinating with the Washington Office as necessary to include the rule revision in fiscal year planning for the Listing and Recovery branches of the Endangered Species Division in Region 2.

**II.  BACKGROUND**
In July, 2006 the Service accepted the Mexican Wolf Blue Range Reintroduction Project 5-Year Review developed by the Adaptive Management Oversight Committee (AMOC) and indicated that we would continue the Mexican wolf reintroduction project with modifications to improve the biological success and social acceptance of the project.  We indicated that we would move forward, in cooperation with our partners, in further assessing and implementing the 37 recommendations contained in the 5-Year Review, ten of which pertained to modification of the Final Rule for the Mexican wolf non-essential experimental population.

Service staff has developed a draft MOU in cooperation with AMOC that defines the roles and responsibilities of the lead agency (the Service) and cooperating parties (AMOC member-agencies, and possibly other Federal land management agencies in Arizona and New Mexico) in developing the EIS for a new Mexican wolf non-essential experimental rule.

A conference call will be held on October 12, 2006, for the AMOC Directors to discuss initiation of the 10(j) rule revision and NEPA process.

**III. OPTIONS**
The Service has the option of initiating the rule revision and NEPA process to revise the Mexican wolf non-essential experimental population regulations or continuing to use the existing regulations.  All AMOC Directors have the option of signing the MOU as a demonstration of their commitment to cooperatively participate in the rule-making and NEPA process, or not signing the MOU.

**IV. PRO/CON ANALYSIS**
Initiating the rule revision and NEPA process will allow the Service and its partners to develop the best possible management regime to support the success of Mexican wolf reintroduction.  Demonstrating a commitment to revision of the rule by signing the MOU will send a clear message to the local public that the Service and AMOC are committed to the biological and social success of

8-2.

Mexican wolf reintroduction. However, the process of rule revision and NEPA analysis will be costly and time-consuming, and require a firm commitment of funding and staffing. In addition, the Service and its partners will need to develop outreach materials to explain the rule-revision and NEPA process to the public within the larger context of gray wolf recovery.

## V. RECOMMENDATION

The Service should initiate the rule revision and NEPA process and should demonstrate its commitment by signing the MOU.

## VI. REGIONAL DIRECTOR DECISION

__X__ Initiate rule revision and NEPA process; sign MOU *as an addendum to existing 2003 MOU.*

_____ Do not initiate rule revision; do not sign MOU

_____ Initiate rule revision but do not sign MOU

_____ Other

_____ Further Discussion

**PREPARED BY:**     Tracy Melbihess                    DATE:  October 5, 2006
                    Recovery Biologist
                    Regional Office
                    #505/248-6665

                    John Morgart
                    Mexican Wolf Recovery Coordinator
                    New Mexico Ecological Services Field Office
                    #505/761-4748

**APPROVED BY:** *Alan M. Shane*                    _10/10/06_
                Acting Assistant Regional Director – ES        Date

ADDENDUM
to the October 31, 2003 Memorandum of Understanding
among the
Arizona Game and Fish Department,
New Mexico Department of Game and Fish,
U.S.D.A. Animal and Plant Health Inspection Service/Wildlife Services,
U.S.D.A Forest Service,
U.S. Fish and Wildlife Service,
White Mountain Apache Tribe,
Arizona Counties of Greenlee and Navajo,
New Mexico County of Sierra,
and the
New Mexico Department of Agriculture
for Conservation of the Mexican Wolf

The signatories to the aforementioned October 31, 2003 Memorandum of Understanding (MOU) have approved this Addendum in accordance with provisions of said MOU. The signatories to that MOU agree that this Addendum is intended solely to clarify the roles of, and provide guidance to, agencies cooperating in carrying out the purpose for which this Addendum is intended (see **Purpose**, below). The agencies listed below (see **Signatory Parties**, below) have agreed to participate in carrying out this Addendum and have indicated such agreement in writing. Collectively, all signatories to this Addendum are hereinafter referred to as Parties. Further, all Parties hereby acknowledge and agree that certain signatories to this Addendum have the prerogative to affirm in writing that their participation is restricted to the execution of this Addendum, and their participation in the Addendum does not indicate nor shall be construed to indicate that they have become or desire to become Cooperators in the full scope of the MOU under which this Addendum is structured.

**Purpose:** The purpose of this Addendum is for the signatory Federal, State, and Tribal entities to cooperatively prepare appropriate National Environmental Policy Act (NEPA) documentation analyzing alternatives to a proposed rule that might designate a new Mexican Wolf Experimental Population Area (MWEPA) and alter some aspects of currently authorized regulations for management of the Mexican wolf in Arizona and New Mexico. The new MWEPA may replace and supersede the current Mexican Wolf non-essential experimental population designation (63 FR 1752) pursuant to section 10(j) of the Endangered Species Act (ESA).

Furthermore, for the purposes of collaborative planning and the production of an Environmental Impact Statement (EIS) that will analyze a range of alternatives and impacts from a proposed new rule, the following:

A. Confirms the formal designation of the U.S. Fish and Wildlife Service (Service) as the Lead Federal Agency with responsibility for completion of the Environmental Impact Statement (EIS) and Record of Decision (ROD). The Lead Federal Agency shall:

    (1) Request the participation of each Cooperating Agency in the NEPA process at the earliest possible time.

Addendum to October 31, 2003 MOU for Mexican Wolf Conservation
Re: Development of an EIS/10j Rule
Page 2 of 9

    (2) Use the environmental analysis and proposals of Parties with jurisdiction by law and/or special expertise, to the maximum extent possible consistent with its responsibility as Lead Federal Agency.

    (3) Meet with a Cooperating Agency at the latter's request.

B. Formally designates the U.S.D.A. Forest Service (USFS), U.S.D.A. Animal and Plant Health Inspection Service/Wildlife Services (WS), Arizona Game and Fish Department (AGFD), New Mexico Department of Game and Fish (NMDGF), and White Mountain Apache Tribe (WMAT) as Cooperating Agencies. It is recognized that Cooperating Agencies have legal authority and/or special expertise applicable to the planning process. Each Cooperating Agency shall:

    (1) Participate in the NEPA process at the earliest possible time.

    (2) Participate in the scoping process.

    (3) Provide information, data, and comments to the lead agency for developing and preparing environmental analyses including portions of the EIS in which the Cooperating Party has special expertise.

    (4) Make available staff support at the Lead Federal Agency's request to enhance the latter's interdisciplinary capability.

C. Formalizes and provides a framework for cooperation and coordination among the Parties that will be necessary in order to successfully complete the EIS in a timely, efficient, and thorough manner.

D. Describes the respective roles, responsibilities, jurisdictional authority, and expertise of each of the Parties in the planning process.

E. Ensures the working relationship between the Parties meets the purposes and intent of NEPA.

F. Provides a structural framework for coordination of the rule-making and NEPA processes.

Project Description – The Service proposes to analyze the results of the Mexican Wolf Blue Range Reintroduction Project 5-Year Review and potentially consider designation of a new MWEPA, as well as a change in selected 10(j) regulations, for the purpose of furthering the conservation of the Mexican wolf from its current status under Blue Range Wolf Recovery Area (BRWRA) regulations. An EIS will analyze options for writing a new 10(j) Rule (including no action), and may include various geographic and management scenarios. A draft EIS and draft

Addendum to October 31, 2003 MOU for Mexican Wolf Conservation
Re: Development of an EIS/10j Rule
Page 3 of 9

10(j) Rule will be published, followed by a final EIS, ROD, and final 10(j) Rule (assuming a new 10(j) Final Rule is consistent with the ROD).

**Recitals:**

WHEREAS, the Service, USFS, WS, AGFD, NMDGF, and WMAT conducted a 5-Year Review of the Mexican Wolf Blue Range Reintroduction Project in December 2005 that culminated in 37 recommendations that identified areas of potential improvement, including development of a new Final Rule under section 10(j) of the ESA that may replace and supersede the existing Final Rule (63 FR 1752) that established a nonessential experimental population of the Mexican gray wolf in Arizona and New Mexico;

Now therefore, the parties hereto agree to cooperatively develop appropriate documentation in order to satisfy the requirements of NEPA, and further agree that;

I. The Service will:

(a) serve as the Lead Federal Agency in coordinating the development of an EIS analyzing the environmental impacts of a proposed new designation of a MWEPA and alternatives thereto; and

(b) provide guidance as to proper process, document format, and information required to satisfy NEPA requirements; and

(c) determine the purpose and need of the project, the conclusions of the environmental analysis, which alternatives are selected for analysis, and make final determinations on content relative to applicable statutory and regulatory requirements; and

(d) develop the EIS under the consistency requirements of Federal law and will incorporate, to the maximum extent possible consistent with its responsibility as Lead Federal Agency, the comments, recommendations, and/or data submitted by Parties in the EIS planning process; and

(e) provide available information and resources for development of the EIS; and

(f) provide timely review of the EIS in order to ensure compliance with Service guidelines for NEPA implementation; and

(g) give, to the maximum extent possible, a reasonable time frame for review and return of consolidated and comprehensive comments; and

Addendum to October 31, 2003 MOU for Mexican Wolf Conservation
Re: Development of an EIS/10j Rule
Page 4 of 9

II. The USFS is recognized to have jurisdiction by law and special expertise and will:

(a) provide available information, data (and supporting analyses), comments, and resources for development of proper NEPA documentation and the EIS as identified in a Work Activity Schedule developed cooperatively by the Parties before initiation of the NEPA process and adaptively revised throughout the process as needed; and

(b) provide timely review of the EIS in order to ensure compliance with Service guidelines for NEPA implementation; and

(c) help collect data to the maximum extent possible, participate in discussions about data assessment and technical reports, prepare selected sections, and provide technical expertise in order to assist in evaluating the effectiveness of all alternatives and the EIS; and

(d) receive working drafts of the EIS and its alternatives and analyses for review and comment in relation to areas of jurisdictional responsibility and/or special expertise; and

(e) will return consolidated and comprehensive comments on working drafts to the Service in an agreed upon time frame consistent with the planning schedule; and

III. WS is recognized to have special expertise and will:

(a) provide available information, data (and supporting analyses), comments, and resources for development of proper NEPA documentation and the EIS as identified in a Work Activity Schedule developed cooperatively by the Parties before initiation of the NEPA process and adaptively revised throughout the process as needed; and

(b) provide timely review of the EIS in order to ensure compliance with Service guidelines for NEPA implementation; and

(c) help collect data to the maximum extent possible, participate in discussions about data assessment and technical reports, prepare selected sections, and provide technical expertise in order to assist in evaluating the effectiveness of all alternatives and the EIS; and

Addendum to October 31, 2003 MOU for Mexican Wolf Conservation
Re: Development of an EIS/10j Rule
Page 5 of 9

(d) receive working drafts of the EIS and its alternatives and analyses for review and comment in relation to areas of jurisdictional responsibility and/or special expertise; and

(e) will return consolidated and comprehensive comments on working drafts to the Service in an agreed upon time frame consistent with the planning schedule; and

IV. The AGFD, NMDGF, and WMAT jointly and individually will:

(a) provide available information, data (and supporting analyses), and resources for development of proper NEPA documentation and the EIS as identified in a Work Activity Schedule developed cooperatively by the Parties before initiation of the NEPA process and adaptively revised throughout the process as needed; and

(b) provide timely review of the EIS in order to ensure compliance with Service guidelines for NEPA implementation; and

(c) help collect data, participate in discussions about data assessment and technical reports, prepare selected sections, and provide technical expertise in order to assist in evaluating the effectiveness of all alternatives and the EIS; and

(d) receive working drafts of the EIS and its alternatives and analyses for review and comment in relation to areas of jurisdictional responsibility and/or special expertise; and

(e) will return consolidated and comprehensive comments on working drafts to the Service in an agreed upon time frame consistent with the planning schedule; and

(f) may meet with expert individuals collectively to obtain individual views, advice, and recommendations. These collections of individuals may not make and implement traditionally Government decisions or perform specific tasks to implement a Federal program; and

V. It is also understood that:

(a) This Addendum is subject to all covenants and stipulations of the October 31, 2003 MOU to which it is an Addendum, and does not replace or invalidate anything within the 2003 MOU, except to the extent to which the Addendum addresses developing an EIS. In the event of any conflict between the two

Addendum to October 31, 2003 MOU for Mexican Wolf Conservation
Re: Development of an EIS/10j Rule
Page 6 of 9

documents, the Addendum shall be considered to supersede the relevant material within the 2003 MOU; and

(b) This Addendum shall become effective upon written concurrence by the referenced signatory Parties below, in accordance with the afore-referenced October 31, 2003 MOU; and

(c) All Parties agree to cooperate fully with each other and to jointly develop and conscientiously attempt to abide by a Work Activity Schedule to achieve the purpose of this Addendum; and

(d) All Parties agree to participate in this planning process in good faith and make every reasonable effort to resolve any perceived areas of conflict. The Parties agree to fully explore issues before coming to conclusions and to commit to searching for opportunities for resolution designed to contribute to an effective outcome; and

(e) All internal working draft documents for the development of the EIS and 10(j) Rule are pre-decisional and the Parties will ensure that these documents will not be made available for review by individuals or entities other than Parties to this Addendum, unless otherwise required by applicable law; and

(f) All documents created, collected, or provided by the Parties in support of the development of the EIS are part of the official Service administrative record and may only be released by the Service to the extent allowed by the Freedom of Information Act and/or the Privacy Act; and

(g) For services related to plan development, all Parties agree not to employ any third party having a financial interest in the outcome of the EIS. The Parties also agree to take all necessary steps to ensure no conflicts of interest exist with any officers, agents (including consultants), or representatives they may employ in the development of the EIS; and

(h) The Parties recognize that nothing in this Addendum will be construed as limiting, affecting, or binding in any way the authority or legal responsibility of any of the Parties to perform beyond the respective authority of each, or as requiring any of the Parties to assume any obligation or expend any sum in excess of authorization and appropriations available. Nothing in this Addendum may be construed to obligate the United States, the Department of the Interior, or the Department of Agriculture to any current or future expenditure of resources in advance of the availability of appropriations from Congress; and

Addendum to October 31, 2003 MOU for Mexican Wolf Conservation
Re: Development of an EIS/10j Rule
Page 7 of 9

(j) The terms of this Addendum are contingent upon sufficient resources being available to the signatory Parties for the performance of this Addendum. The Parties hereby agree to jointly develop a Work Activity Schedule for this project, including a budget and identifying sources of funding, as appropriate, within this EIS/10(j) project. The decision as to whether sufficient resources are available to each signatory Party shall be determined by each signatory, shall be accepted by all other signatories, and shall be final [Note: for NMDGF, "sufficient resources" means appropriated dollars, and NMDGF is not obligated by this Agreement to seek funds from the Legislature.]; and

(k) The Federal Parties' intent is to endeavor to use the Congressional budget process to fund this EIS/10(j) project. The non-Federal Parties intent is to seek sufficient Federal funding for this EIS/10(j) project through direct Congressional allocation, and/or, as appropriate and necessary, other sources that are in addition to Federal funds currently available to AGFD, NMDGF, or WMAT, rather than by reallocation of existing funds (note: funds raised by non-Federal parties shall be separate and distinct from the Federal partners. This shall not preclude non-Federal partners from using Federally-originated funds to contribute to their operating budgets. It is understood by all parties that Federal funds cannot be used to match Federal funds, e.g., as in cost-share agreements, unless Congress has specifically authorized an exception); and

(l) No Right of Action: This Addendum is strictly for internal management purposes for the Parties. It is not legally enforceable and shall not be construed to create any legal obligation on the part of the Parties or their respective agencies. This agreement shall not be construed to provide a private right or cause for action by any person or entity including third-parties; and

(m) Press Releases. All Parties to this Addendum will obtain prior approval from the other Parties of all press releases, published advertisements, or other statements intended for the public that refer to this Addendum or its Parties, or the name or title of any employee of any of the Parties in connection with this agreement; and

(n) Elected Officials Not to Benefit: No member of or delegate to Congress shall be entitled to any share or part of this Addendum, or to any benefit that may arise from it; and

(o) The Lead Federal Agency shall engage in government-to-government consultation with affected Indian tribe(s) during all phases of the planning process, in accordance with applicable federal statutes, regulations, and other authorities, including NEPA, the National Historic Preservation Act, the

Addendum to October 31, 2003 MOU for Mexican Wolf Conservation
Re: Development of an EIS/10j Rule
Page 8 of 9

American Indian Religious Freedom Act, and Secretarial Order 3206. Status as a Cooperating Agency in no way affects the responsibility of the Lead Federal Agency, and the authority of affected tribe(s) to engage in these government-to-government consultations. To the extent that Parties to this Addendum receive any Indian Trust Asset data as a function of the requirement to conduct government-to-government consultations with affected Indian tribes, the Lead Federal Agency certifies that it will accord such data all necessary protection and security pursuant to applicable statutes, regulations, and policies, including those set forth in the context of any applicable litigation; and

(p) Notices: All notices, demands, or requests from one Party to another may be personally delivered, sent by facsimile, sent by recognized overnight delivery service, or sent by mail, certified or registered, postage prepaid, to the persons set forth below or shall be deemed given 5 days after deposit in the United States Postal Service mail, certified and postage prepaid, return receipt requested and addressed as follows or at such other address as any Party may from time to time specify to the other Parties in writing and shall be effective at the time of personal delivery, facsimile transmission, or mailing:

    i.   United States Fish and Wildlife Service
         Attn: John R. Morgart
         New Mexico Ecological Services Field Office
         2105 Osuna NE
         Albuquerque, New Mexico 87102
         Phone: 505-761-4748
         john_morgart@fws.gov

    ii.   U.S. Forest Service
         Attn: Bobbi L. Barrera
         333 Broadway SE
         Albuquerque, New Mexico 87102
         Phone: 505-842-3194
         blbarrera@fs.fed.us

    iii.  USDA APHIS – Wildlife Services
         Attn: David Bergman
         8836 North 23rd Avenue, Suite 2
         Phoenix, Arizona 85021
         Phone: 602-870-2081
         david.l.bergman@usda.gov

Addendum to October 31, 2003 MOU for Mexican Wolf Conservation
Re: Development of an EIS/10j Rule
Page 9 of 9

> iv. Arizona Game and Fish Department
>     Attn: Terry B. Johnson
>     2221 West Greenway Road
>     Phoenix, Arizona 85023-4399
>     Phone: 602-789-3707
>     teebeej@azgfd.gov
>
> v. New Mexico Department of Game and Fish
>     Attn: Chuck Hayes
>     P.O. Box 25112
>     Santa Fe, New Mexico 87504
>     Phone: 505-476-8101
>     chuck.hayes@state.nm.us
>
> vi. White Mountain Apache Tribe
>     Attn: John Caid
>     P.O. Box 220
>     Whiteriver, Arizona 85941
>     928-338-4385
>     jcaid@wmat.nsn.us

(q) This Addendum becomes effective upon written concurrence by the referenced signatory Parties below, and may subsequently be amended in accordance with the October 31, 2003 MOU to which it is an Addendum. Any Party may terminate its involvement in this Addendum by providing written notice of termination in accordance with the aforementioned MOU. If not terminated sooner, this Addendum will end upon agreement of all Parties once the EIS is final and the Service issues the ROD.

**Signatory Parties to this Addendum**:

Arizona Game and Fish Department; concurrence letter of November 28, 2006
New Mexico Department of Game and Fish; concurrence letter of December 7, 2006
U.S.D.A. APHIS – Wildlife Services, Western Region; concurrence letter of December 1, 2006
U.S.D.A Forest Service, Region 3; concurrence letter of December 6, 2006
U.S. Fish and Wildlife Service, Region 2; concurrence letter of December 5, 2006
White Mountain Apache Tribe, concurrence pending

Document MW MOU Addendum for EIS.20061207.Final.doc



# United States Department of the Interior

## FISH AND WILDLIFE SERVICE

P.O. Box 1306
Albuquerque, New Mexico 87103
http://ifw2es.fws.gov

RECEIVED

FEB 0 7 2007

SEWS-NMESF

In Reply Refer To:
R2/ES-TE
CL 1-1

JAN 2 9 2007

Bruce C. Thompson, Director
New Mexico Department of Game and Fish
P.O. Box 25112
Santa Fe, New Mexico  87504

Dear Dr. Thompson: *Bruce*

I am pleased to inform you that your joint request with the Arizona Game and Fish
Department to amend your existing endangered species section 6 grant, Mexican Wolf
Conservation (NM-E-62-1), to increase the Federal funding by $128,000 is approved.
The non-Federal match required for joint proposals is 10 percent.  New Mexico
Department of Game and Fish's Federal portion of this grant is $64,000 and the required
match is $6,400.  Please advise me within 2 weeks of receipt of this letter, whether you
accept our offer of $64,000 to amend this grant, and provide the Division of Federal
Assistance with an amended Application for Federal Assistance to increase the grant
amount.

If you have any questions, please have your staff contact Wendy Brown, Recovery
Coordinator, at 505-248-6664.  Thank you for your continued support of this important
program.

Sincerely,

ACTING

Regional Director

Bruce C. Thompson, Director                                                          2

cc: Joyce Johnson, Chief, Division of Federal Assistance, Albuquerque, NM
    Recovery Coordinator, Region, Albuquerque, NM
    Supervisor, Ecological Services Field Office, Albuquerque, NM
    Mexican Wolf Recovery Coordinator, Albuquerque, NM



# United States Department of the Interior

### FISH AND WILDLIFE SERVICE

P.O. Box 1306
Albuquerque, New Mexico 87103
http://ifw2es.fws.gov

In Reply Refer To:
R2/ES-TE
CL 1-1

JAN 2 9 2007

Duane L. Shroufe, Director
Arizona Game and Fish Department
2222 West Greenway Road
Phoenix, Arizona 85023

Dear Mr. Shroufe:

I am pleased to inform you that your joint request with the New Mexico Department of Game and Fish to amend your existing endangered species section 6 grant, Mexican Wolf Reintroduction (AZ E-33), to increase the Federal funding by $128,000 is approved. The non-Federal match required for joint proposals is 10 percent. Arizona Game and Fish Department's Federal portion of this grant is $64,000 and the required non-Federal match is $6,400. Please advise me within 2 weeks of receipt of this letter whether you accept our offer of $64,000 to amend this agreement, and provide the Division of Federal Assistance with an amended Application for Federal Assistance to increase the grant amount.

If you have any questions, please have your staff contact Wendy Brown, Recovery Coordinator, at 505-248-6664. Thank you for your continued support of this important program.

Sincerely,

ACTING

Regional Director

Duane L. Shroufe, Director                                                                2

cc:  Joyce Johnson, Chief, Division of Federal Assistance Albuquerque, NM
     Recovery Coordinator, Region 2, Albuquerque, NM
     Supervisor, Ecological Services Field Office, Phoenix, AZ
     Mexican Wolf Recovery Coordinator, Albuquerque, NM

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 06-2119 (RCL) |
| | ) | |
| DIRK KEMPTHORNE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**[Proposed] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on Defendants' Motion To Dismiss Plaintiff's Complaint.

Upon consideration of the parties' arguments and memoranda, it is hereby ORDERED:

(1)     that Defendants' Motion is GRANTED; and

(2)     that Plaintiff's Complaint For Declaratory And Injunctive Relief is DISMISSED

with prejudice.

Dated this ___ day of _____, 2007

_____
Royce C. Lamberth
United States District Judge