UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>DIRK KEMPTHORNE, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)  Civil No. 06-2119 (RCL)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS**

Federal Defendants, Secretary of the United States Department of the Interior Dirk Kempthorne, and Director of the United States Fish and Wildlife Service H. Dale Hall (collectively "FWS" or "Service"), hereby reply in support of their Motion to Dismiss Plaintiff's Complaint. In Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl's Opp."), Plaintiff argues that its case is not moot because it has no assurance that FWS intends to initiate a rulemaking addressing all of the modifications to the 10(j) regulations it requested. Pl's Opp. at 22. Plaintiff also argues that it lacks such an indication because FWS has not published a proposed rule in the Federal Register. *Id.* at 15.

As set out below, in its February 8, 2007 letter, FWS committed to a rulemaking process in which all of Plaintiff's issues will be considered. Thus, it has already given Plaintiff the answer to its rulemaking petition that this lawsuit seeks. Accordingly, Plaintiff's "unreasonable delay" claim is moot, and this case should be dismissed for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

**1.     FWS Provided Plaintiff A Full Response To Its Petition.**

In its February 8, 2007 letter, FWS made clear to Plaintiff that the letter constituted a "decision regarding your petition." Morgart Decl., Ex. 1 at 1. It stated that FWS had "started the process to modify the 10(j) rule" as Plaintiff requested. *Id.* The letter expressly stated that the rulemaking process will consider expanding the boundaries of the 10(j) recovery area. *Id.* at 1-2. Further, the letter referred Plaintiff to an October 2006 memorandum committing FWS to "assessing and implementing the 37 recommendations contained in the 5-Year Review, ten of which pertained to modification" of the 10(j) Rule. Morgart Decl., Ex. 2 at 1. Those modifications encompass the issues raised by Plaintiff's petition: releasing Mexican wolves into the secondary recovery zone, Pl's Attachment 2, ARC 4, Recommendation 7; allowing Mexican wolves to establish territories outside of the Blue Range Wolf Recovery Area, *id.* ARC 3-4, Recommendation 5c and 9; and considering possible "mechanisms" to address "carcass removal or disposal," *id.* ARC 5, recommendation 12. Further, the rulemaking process will allow comment by Plaintiff in the NEPA scoping process as well as comments on the draft Environmental Impact Statement ("EIS") and proposed rule.[1/] FWS must respond to those comments in the final EIS and in issuing the final rule. *Public Serv. Comm'n of Kentucky v. FERC*, 397 F.3d 1004, 1008 (D.C. Cir. 2005) (an agency must "respond meaning-fully to the

---

[1/]     The Service's response provides the maximum assurance it can give regarding the content of any final rule. The Endangered Species Act ("ESA") requires that any designation of an experimental population under 10(j) be adopted in accordance with 5 U.S.C. § 553. Section 553(c) requires that notice and an opportunity to comment be given to the public. 5 U.S.C. § 553(c). As discussed above, the Service is obliged to take public comment into account when crafting a final regulation. However, as the D.C. Circuit has stated, a court "is in no position to pretermit the prescribed statutory process" when the agency has just begun to delve into the area of its expertise. *In re International Union, United Mine Workers*, 231 F.3d 51, 54 (D.C. Cir. 2000).

arguments raised before it") (*citing Canadian Ass'n of Petroleum Producers v. FERC,* 254 F.3d 289, 299 (D.C. Cir. 2001)).

Thus, Plaintiff got what it asked for - - a rulemaking process that will address the issues it raised in its petition. *In re International Union*, 231 F.3d at 54; *Central Louisiana Elec. Co. v. ICC*, 724 F.2d 173, 176 (D.C. Cir. 1983) (a case is moot where agency made clear that it would "consider" comments on the issues of concern to petitioners). Accordingly, Plaintiff's "unreasonable delay" claim is moot, and this case must be dismissed. *Burlington Northern R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 688 (D.C. Cir. 1996) (a case is moot if "intervening events make it impossible to grant the prevailing party effective relief") (citing *Church of Scientology v. United States*, 506 U.S. 9, 11(1992)); *Friends of Keeseville, Inc. v. FERC*, 859 F.2d 230, 232 (D.C. Cir. 1988) (challenges to decision granting permit is moot because plaintiff "suffers no continuing judicially remediable injury").

**2.    FWS Does Not Have To Issue A Proposed Rule To Respond Adequately To Plaintiff's Petition.**

Plaintiff suggests that FWS's response is inadequate to moot this case because FWS has not issued a proposed rule in the Federal Register. Pl's Opp. at 15 and 23, n.4. Plaintiff argues further that this Court will not have any basis for judging the adequacy of FWS's response until such a proposed rule is issued. Pl's Opp. at 24. Plaintiff ignores the fact that, because its proposal may be considered a major federal action significantly impacting the human environment, the Service must integrate compliance with the National Environmental Policy Act ("NEPA") into the rulemaking process. 42 U.S.C. 4332(C); 40 C.F.R. § 1506.6. FWS laid out the process it agreed to follow in its Memorandum of Understanding ("MOU") with members of the Mexican Wolf Adaptive Management Oversight Committee ("AMOC"):

>An EIS will analyze options for writing a new 10(j) Rule (including no action), and may include various geographic and management scenarios. A draft EIS and draft 10(j) Rule will be published, followed by a final EIS, [Record of Decision], and final 10(j) Rule.

Morgart Decl., Ex. 3 at 2-3. Thus, FWS will, after taking public comment on the scope of the NEPA documentation, prepare a draft EIS fully evaluating the alternatives as part of the process developing a proposed rule.[2] In the interim, FWS has committed to the rulemaking in an MOU with other sovereigns, Morgart Decl., Ex. 3, funded grants to state wildlife agencies to conduct the scoping for the NEPA process, Morgart Decl. at 2, and sent Plaintiff a letter assuring it that its issues will be considered in the rulemaking, Morgart Decl., Ex 1.

To allow the Court to judge the adequacy of FWS's response, Plaintiff suggests that the Court should set a schedule for issuing a proposed rule. Pl's Opp. at 24. Plaintiff did not seek this relief in its Complaint[3], and should not be allowed to do so here to keep its case from being mooted out by FWS's response. *Clarke v. United States*, 915 F.2d 699, 703 (D.C. Cir. 1990) ("[W]here plaintiffs are resisting a mootness claim we think they must be estopped to assert a broader notion of their injury than the one on which they originally sought relief."). Moreover, Plaintiff retains a remedy if it is dissatisfied with FWS's progress in issuing the revised 10(j) Rule.[4] Plaintiff may file a new claim alleging unreasonable delay under § 706(1) of the APA in completing the rulemaking. See *In re International Union*, 231 F.3d at 55. It is clear, however,

---

[2]   Plaintiff cites no authority for the proposition that an "unreasonable delay" claim can be mooted only if the agency issues a proposed rule.

[3]   Plaintiff's Complaint simply asks that this Court "order Defendants to issue a final decision on the Center's Petition within 45 days." Compl. at 16.

[4]   In its February 8, 2007 response, FWS estimated that it may take three years to complete the NEPA documentation and rulemaking process. Morgart Decl., Ex. 1 at 2.

that Plaintiff's claim in this litigation, that the Service has unreasonably delayed in responding to its petition, has been overtaken by events and should be dismissed as moot.

**3.   FWS Provided An Adequate Commitment To Address The Issues In Plaintiff's Petition.**

Plaintiff argues that this case is "governed" by the D.C. Circuit's holding in *In re American Rivers & Idaho Rivers United* ("*American Rivers*"), 372 F.3d 413, 419 (D.C. Cir. 2004). Pl's Opp. at 22. Plaintiff argues that *American Rivers* holds that a response to a rulemaking petition must be "unequivocal" and "coherent." Pl's Opp. at 19. American Rivers, however, is inapposite. First, unlike the instant case, *American Rivers* involves a decision on the merits of an unreasonable delay claim, *i.e.*, whether the Federal Energy Regulatory Commission's ("FERC's") more than six-year delay in responding to a petition was reasonable. Second, *American Rivers* involves the question, not present here, regarding whether, <u>in the absence of any response</u>, evidence that the petitioned action may have already been undertaken was adequate to constitute a response. Finally, regardless of the applicability of *American Rivers*, FWS's commitment to address the issues in Plaintiff's petition is neither qualified nor ambiguous.

In *American Rivers*, the plaintiffs petitioned FERC to formally consult under the ESA regarding its ongoing regulatory authority over hydropower operations in the Snake River basin. 372 F.3d at 414. The petition went unanswered for six years. *Id.* The plaintiffs sought a writ of mandamus compelling a response. *Id.* FERC <u>never</u> responded to the petition or argued that the case was moot. Thus, the only issue before the Court was whether the six-year delay was reasonable. *Id.* at 417-18. That is not the issue before the Court in Defendants' motion to Dismiss.

Moreover, FERC did not try to demonstrate the reasonableness of its delay, but instead "vacillate[d]" between arguing that it did not have an obligation to respond or consult and asserting that it could do no more. *Id.* at 420. The D.C. Circuit found the first argument had no merit on the face of the APA. *Id.* at 419. The holding in *American Rivers*, that the APA creates a duty to respond to a petition, is not an issue in this case. Here, Defendants do not question FWS's obligation to respond, but, instead, maintain that they have provided a response that moots Plaintiff's case.

The Court rejected FERC's second assertion, that it could do no more, finding this assertion to go to the merits rather than to the issue of the reasonableness of FERC's delay. *Id.* at 419. At oral argument, in *American Rivers*, FERC made a variation of its assertion, arguing that it had already done what was requested in the petition. *Id.* The Court also rejected this argument as running "counter to its position on brief." *Id.* The Court went on to find that FERC's "resort to certain record items" as evidence that it had actually done the petitioned action does "not constitute an unequivocal—or even coherent—response to the 1997 petition." *Id.* The record items consisted of conflicting letters, one requesting consultation and another latter letter stating that FERC was not initiating consultation. *Id.* at 19, n.11. The Court's holding, thus, was animated by this contradictory evidence as to whether the agency had in fact taken the action it claimed should constitute a response. Thus, in *American Rivers*, the issue the Court was addressing was the sufficiency of evidence required <u>in the absence of a response</u> required to show that an action was sufficient to constitute a response. Unlike in *American Rivers*, here, the Service responded directly to Plaintiff's petition; it does not seek to have the Court accept a surrogate for that response. Further, as demonstrated above, FWS's response was

neither contradictory or ambiguous - - it gave Plaintiff got what it asked for - - a rulemaking process that addresses the issues raised in Plaintiff's petition.

## CONCLUSION

The Service has already given Plaintiff the answer to its rulemaking petition that this lawsuit seeks. FWS has started the process to potentially modify the 10(j) rule to establish a nonessential, experimental population of the Mexican Gray Wolf, including expansion of recovery area boundaries, the use of areas outside the Blue Range Wolf Recovery Area, and consideration of mechanisms to resolve issues related to carcass removal and disposal. Further, Plaintiff will have an opportunity to comment on the scoping of the NEPA documentation, the draft NEPA documentation, and any proposed rule to ensure that its views are fully considered in the process. Accordingly, this case is moot and should be dismissed for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

Respectfully submitted this 8th day of May, 2007.

MATTHEW J. McKEOWN
Assistant Attorney General

LISA RUSSELL
Assistant Section Chief

/s /Robert L. Gulley
_____
ROBERT L. GULLEY
Senior Trial Attorney
Wildlife & Marine Resources Section
Benjamin Franklin Station, P.O. Box 7369
Washington, DC 20044-7369
(202) 305-0500 (ph)
(202) 305-0275 (fx)
robert.gulley@usdoj.gov

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing will be e-filed on May 8, 2007, and will be automatically served upon counsel of record, all of whom appear to be subscribed to receive notice from the ECF system.

                                                                               */s/ Robert Gulley*