UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY,**   )  <br>                                                                     )  <br>           **Plaintiff,**                                    )  <br>                                                                     )  <br>           v.                                                        )  <br>                                                                     )       Civ. Action No. 06-02119 (RCL)  <br>**DIRK KEMPTHORNE, <u>et al.</u>,**                   )  <br>                                                                     )  <br>                                                                     )  <br>           **Defendants.**                                )  <br>                                                                     ) | |

**OPPOSITION TO DEFENDANT'S MOTION TO STAY BRIEFING**

Having agreed to an expedited briefing schedule for plaintiff's Expedited Motion to Compel the Complete Administrative Record (Docket No. 17), on the very same day defendants (collectively "Service" or "FWS") reneged on that agreement by filing their <u>own</u> expedited motion to stay <u>all</u> briefing in this case, including plaintiff's Motion to Compel the Complete Administrative Record. Defendants' request not only contradicts their previous representation to plaintiff, but is also completely inconsistent with the specific process for resolution of this case agreed to by the parties' in their Joint Rule 16.3 Report (and ordered by this Court), and more important, will further compound the unecessary delay that is already jeopardizing the endangered Mexican wolf's chances for survival and recovery in the wild. Accordingly, defendants' Motion to Stay Briefing should be denied.

**BACKGROUND**

On December 14, 2006, plaintiff filed the Complaint in this case challenging defendants' failure in nearly three years to respond to the Center's March 29, 2004 Rulemaking Petition, which

sought three specific amendments to the "10(j) regulations" for the Mexican wolf that would increase the species' chances for survival and recovery in the wild. Complaint (Docket No. 1). On March 29, 2007 defendants filed a Motion to Dismiss, alleging that the case was rendered moot by a letter the agency sent plaintiff after the lawsuit was filed. Defendant's Motion to Dismiss (Docket No. 7).

On April 3, 2007, the Court ordered the parties to meet and confer under Local Rule 16.3, and to file a meet and confer report and a "proposed scheduling order." April 3, 2007 Order (Docket No. 9). While the parties briefed defendants' pending Motion to Dismiss, the parties also complied with the Court's April 3rd Order, and, on April 24, 2007, they filed a Joint Rule 16.3 Report detailing the agreed on process for resolving this case. See Joint Rule 16.3 Report (Docket No. 11). Specifically, although the parties' Report explained that the issue of mootness was "currently being briefed," the Report provided that if the case was "not dismissed, it will be resolved by summary judgment," id. at 2, and the parties agreed to a specific schedule for production of the Administrative Record and briefing of summary judgment motions. Id. at 2-3 (emphasis added). The parties' schedule was embodied in an Order of the Court on May 2, 2007. May 2, 2007 Order (Docket No. 13).

Consistent with that briefing schedule, defendants were required to produce the Administrative Record for this case by June 29, 2007. However, as explained in plaintiff's June 29, 2007 letter to the Service and plaintiff's Motion to Compel, in fact, the Service did not provide the complete Administrative Record. In response to plaintiff's June 29, 2007 letter explaining its concerns with the completeness of the Record, with minor exceptions, defendants refused to supplement the Record with any of the material referred to in plaintiff's letter. Plf. Motion to

Compel at 2. In addition, defendants did not suggest then (or at any other time prior to filing the stay motion) that the briefing schedule should be stayed until the Court issues an order resolving defendants' Motion to Dismiss.

On July 10, 2007, recognizing its obligation to address Administrative Record disputes prior to summary judgment briefing, but not wanting to further delay this matter in light of the important endangered species concerns at issue, plaintiff filed its Expedited Motion to Compel the Complete Administrative Record. Plf. Motion to Compel at 7. Before filing the Motion, plaintiff's counsel obtained defendants' consent to an expedited briefing schedule for that motion, under which defendants would file their opposition by July 17, 2007 and plaintiff would file any reply by July 18, 2007, and plaintiff's compel motion informed the Court of that agreement. Motion to Compel at 1.

Nevertheless, within hours of plaintiff filing its Motion to Compel, defendants filed an expedited Motion to Stay Briefing, requesting that the Court stay <u>all</u> briefing in this case, including briefing of plaintiff's Motion to Compel, until the Court issues an order resolving defendants' pending Motion to Dismiss. <u>See</u> Defendant's Motion to Stay Briefing ("Stay Mot.") (Docket No. 18). For the reasons set forth below, that request should be denied.

## **ARGUMENT**

Rather than simply oppose plaintiff's Motion to Compel according to the schedule already agreed to by the parties, the government instead has filed a motion to stay <u>all</u> briefing in this case that will only further perpetuate the unreasonable delay that is already jeopardizing the nearly extinct Mexican wolf's chances of survival and recovery in the wild. As set forth below, defendants' stay motion is entirely inappropriate at this late juncture and should not be granted.

Indeed, defendants' request to stay this matter completely ignores the fact that the parties have already agreed to the process for resolving this case – which the Court already approved in the May 2, 2007 Scheduling Order – including how to proceed in the event that the Court has not granted defendants' pending Motion to Dismiss. See Rule 16.3 Report (Docket No. 11); see also May 2, 2007 Order (Docket No. 13). Pursuant to that process, on June 27, 2007, defendants produced what was supposed to be the complete Administrative Record for this case, and did not indicate then (or at any other time prior to this motion) that defendants would be unable to fully comply with this or any other aspect of the Court's Scheduling Order because of the reasons now proffered – i.e., that the Court has not yet issued a decision on defendant's Motion to Dismiss. Unless defendants intentionally withheld material from the Administrative Record they were required to filed by June 29, 2007, the mere fact that plaintiff has now moved to compel a more complete Administrative Record should not alter the process the parties already agreed to for resolving this case. Indeed, since, pursuant to the schedule, plaintiff's summary judgment brief is due August 3, 2007, and the defendants' brief is not due until September 4, 2007, should the Court grant plaintiff's Motion to Compel, the government would not be required to compile the supplemental Administrative Record at the same time it is preparing its brief on the merits.

In fact, the government's stay motion does not demonstrate any meaningful harm that defendants will suffer as a result of proceeding with the two briefing schedules that, again, were already agreed to by the parties. The government's contention that the Court does not have jurisdiction to address the merits of this case, Stay Mot. at 2, can be reiterated and thoroughly addressed by the government in its opposition to plaintiff's summary judgment motion. Moreover,

at that point, if the Court grants plaintiff's Motion to Compel, the parties and the Court will have the benefit of a full and complete Administrative Record as a basis to review that and all of the other contested issues in this case. As plaintiff pointed out in its memorandum in support of the Motion to Compel, there is material in the Record that bears <u>directly</u> on defendants' assertion that it has already addressed all of the issues raised by the Center's Rulemaking Petition. <u>See</u> Motion to Compel at 6 n.1. Therefore, particularly since this was the process specifically contemplated by the parties at the outset of this case, defendants simply have not raised any new reason for departing from the agreed on process for resolving this case.

On the other hand, the Center – and more important, the Mexican wolf – will certainly be prejudiced by any further delay in this case. Thus, as already described in plaintiff's Motion to Compel:

> plaintiff is extremely concerned that the agency's failure to produce a complete Administrative Record will only further lengthen the inexcusable delay that has occurred since the Center filed its Rulemaking Petition, to the detriment of Mexican wolves that are already on the brink of extinction.

<u>Id.</u> at 7. Although such information was omitted from the Service's self-serving Record for this case, FWS' own population data (which plaintiff obtained from the agency's web-site) demonstrates that Mexican wolves have <u>declined</u> in numbers in recent years and, although they have rebounded to some extent in the last year, are currently far below the population numbers the Service projected would be achieved by now when, in 1996, the agency initially considered whether to reintroduce Mexican wolves in the wild. <u>See</u> Plaintiff's Exhibit A (FWS statistics demonstrating that Mexican wolves declined from 55 wolves in 2003, to potentially as few as 44 wolves in 2004 and 35 wolves in 2003). The Service's data thus reinforce the conclusions made by independent scientists in June

2001 – over six years ago – that changing the current regime for managing Mexican wolves is "required" in order for Mexican wolves to establish a "viable" population capable of recovering in the wild. Paquet, Paul, et. al, Mexican Wolf Recovery: Three Year Program Review and Assessment 16 (June 2001) ¶ 23 (Attachment 3 to Plaintiff's Opposition to Defendant's Motion to Dismiss) (allowing Mexican wolves to disperse outside of the designated recovery area is "expected and required if the regional population is to be viable").

Not only has FWS failed to act on the urgent warnings of leading scientists for the past six years, but now the agency is also seeking to insert even further unnecessary delay into this Court's proceedings, by staying briefing in this case and, hence, the Court's resolution of plaintiff's claim, i.e., that the Service's significant delay in resolving all of the issues raised by plaintiff's Rulemaking Petition – the purpose of which is to increase the Mexican wolf's prospects for survival and recovery in the wild – is "unreasonable" and preventing this species from establishing a viable population that is capable of independently surviving and recovering the wild.

For this reason, and because the government has not provided the Court with any new basis for departing from the specific process for resolution of this case that had already been agreed to by the parties, as reflected in the Joint Rule 16.3 Report and ordered by the Court on May 2, 2007, this Court should deny defendants' Motion to Stay Briefing.

                                           Respectfully submitted,

                                           /s/ Erin M. Tobin
                                           Erin M. Tobin
                                           (D.C. Bar No. 494948)
                                           Katherine A. Meyer
                                           (D.C. Bar No. 244301)

                                            Meyer Glitzenstein & Crystal
                                            1601 Connecticut Ave., N.W., Suite 700
                                            Washington, D.C.  20009
                                            (202) 588-5206
                                            (202) 588-5049

Dated: July 16, 2007

# Civil Action No. 06-2119 (RCL)

# Exhibit A

Mexican Wolf Blue Range Reintroduction Project Statistics

Table 1. Minimum population count and number of breeding pairs of Mexican wolves within the Blue Range Wolf Recovery Area, compared to projections in the 1996 Final Environmental Impact Statement, 1998 to 2006.

**Data Current as of 8 March 2007**

|      | Population count | | No. of breeding pairs | |
| --- | --- | --- | --- | --- |
| Year | Minimum | FEIS prediction | Minimum | FEIS prediction |
| 1998 | 4 | 7 | 0 | 1 |
| 1999 | 15 | 14 | 0 | 2 |
| 2000 | 22 | 23 | 1 | 4 |
| 2001 | 26 | 35 | 3 | 6 |
| 2002 | 42 | 45 | 5 | 8 |
| 2003 | 55 | 55 | 3 | 10 |
| 2004 | 44-48 | 68 | 6 | 12 |
| 2005 | 35-49 | 83 | 5 | 15 |
| 2006 | 59 | 102 | 7 | 18 |