UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
CENTER FOR BIOLOGICAL            )
DIVERSITY,                       )
                                 )
      Plaintiff,                 )
                                 )
      v.                         )     Civil Action No. 06-2119 (RCL)
                                 )
DIRK KEMPTHORNE, *et al.*,       )
                                 )
      Defendants.                )
_____)

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Plaintiff brought suit against defendants Secretary of the Department of Interior and Director of the U.S. Fish and Wildlife Service ("FWS") on December 14, 2006 alleging that defendants have unreasonably delayed making a final decision on plaintiff's rule-making petition in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1). Plaintiff filed its rule-making petition on March 29, 2004 requesting FWS to take certain steps to prevent the Mexican gray wolf ("Mexican wolf") from becoming extinct in the wild. After waiting for a decision on the petition for over two years, plaintiff seeks a Court order to compel defendants to issue a final decision on plaintiff's petition pursuant to 5 U.S.C. § 706(1). Defendants allege that they made a final decision on plaintiff's petition since the commencement of this lawsuit. Accordingly, defendants contend that plaintiff's claims are moot and move this Court to dismiss plaintiff's claim pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction over the subject matter. For the foregoing reasons, the Court will GRANT defendants' Motion [7] to Dismiss.

## II.     BACKGROUND

The Mexican wolf was driven to the brink of extinction as a result of federal and local government efforts to eradicate the population of Mexican wolves in the wild.[1] (*See* Compl. ¶ 15.) Following the passage of the Endangered Species Act ("ESA"), however, the government listed the Mexican wolf as an endangered species on April 28, 1976 and began efforts to restore the Mexican wolf population in the wild. (*Id.* ¶ 16.) To that end, FWS adopted a Recovery Plan in 1982 with Mexico. (*Id.*) The plan provided that FWS would protect the Mexican wolves from being hunted. (*Id.*) In addition, FWS committed to breed Mexican wolves in captivity for release in Arizona and New Mexico on lands which wolves historically occupied.[2] (*See id.* ¶¶ 14, 16.)

Defendants, however, failed to implement the Recovery Plan until 1993. (*Id.* ¶ 17.) Then, after five years of rule-making, defendants finally promulgated a regulation ("the 10(j) rule") authorizing the reintroduction of the Mexican wolves pursuant to Section 10(j) of the ESA on January 12, 1998.[3] (*Id.* ¶ 18.) The 10(j) rule created two recovery zones covering portions of Arizona and New Mexico, but provided that only one zone would be used during the initial reintroduction period (*Id.* ¶ 19.) Furthermore, the 10(j) rule required defendants to conduct progress reports after the third and fifth years of the project to recommend the continuation,

---

[1] Known as "one of the rarest land mammals in the world," Mexican wolves had been entirely extirpated in the wild by 1998. (Compl. ¶¶ 15, 18.)

[2] Historically, the Mexican wolves also occupied the desert and forest regions of Texas and the Republic of Mexico. (Compl. ¶ 14.)

[3] Section 10(j) of the ESA provides that the Secretary of the Interior "may authorize the release . . . of any population . . . of an endangered species or threatened species outside the current range of such species." 16 U.S.C. § 1359(j)(2)(A) (2006).

modification, or termination of the reintroduction effort. (*Id.* ¶ 23.) As a result of rule 10(j), the first Mexican wolves were reintroduced into the wild in the Blue Range Wolf Recovery Area in March 1998. (*Id.* ¶ 24.)

In 2001, defendants conducted the three-year review. (*Id.*) The review recommended the continuation of the reintroduction plan and proposed several modifications to the 10(j) rule. (*See id.* ¶ 25.) Specifically, the review recommended defendants to modify the regulation: (1) to allow FWS to release Mexican wolves into the additional recovery area located in the Gila National Forest; (2) to allow the wolves to establish territories outside the Recovery area; and (3) to require livestock owners on public land to take responsibility for the removal and disposal of deceased livestock. (*See id.* ¶¶ 26-28.) These findings were supported by an analysis conducted by the Arizona Game and Fish Department and the New Mexico Department of Game and Fish. (*See* Pl.'s Opp'n at 10.) FWS, however, failed to implement any of the proposed changes to the reintroduction regulation and continued the reintroduction effort pursuant to the existing 10(j) rule. (Compl. ¶ 29.)

After waiting for FWS to implement the recommendations of the three-year review for nearly three years, plaintiff petitioned FWS to amend the 10(j) rule on March 29, 2004. (*Id.*) The experimental Mexican wolf populations were in decline, and plaintiff feared that without change to the current 10(j) rule, the Mexican wolf would once again become extinct in the wild. (*Id.*) Thus, plaintiff's petition requested FWS to begin the rule-making process. (*See id.* ¶ 31; Pl.'s Opp'n Attach. 5 at 14.) Specifically, the petition asked FWS to amend the 10(j) rule: (1) to allow FWS to release Mexican wolves in the additional recovery area; (2) to permit wolves to establish territories outside the boundaries of the Blue Range Recovery Area; and (3) to define

3

"nuisance" and "problem" wolves to exclude animals that scavenge on the remains of livestock that die from non-wolf related causes. (Compl. ¶ 31.) Defendants acknowledged receipt of plaintiff's petition on June 30, 2004 and informed plaintiff that a rule modification was being considered, but a final determination had not been made. (*See* Pl.'s Opp'n Attach. 6.) The letter also stated that defendants would contact plaintiff when defendants make a final determination on the proposed rule-making and when defendants take action on plaintiff's petition. (*Id.*)

In 2005, the Mexican Wolf Adaptive Management Oversight Committee ("AMOC") concluded its five-year review and submitted it to FWS.[4] (Compl. ¶ 34.) The five-year review recommended the continuation of the reintroduction effort, but with several modifications to the 10(j) rule. (*Id.*) In particular, AMOC recommended FWS to modify the 10(j) rule to allow the wolves to spread outside the recovery area and to combine the two recovery zones in order to provide the wolves with more territory. (*Id.*) In 2006, FWS agreed with the recommendations of the five-year report. (*Id.* ¶ 35.) However, FWS did not issue any amendments to modify the 10(j) rule or state that it would propose a new rule. (*Id.*)

By December 2006, plaintiff had not yet received a final decision either granting or denying its petition. (*Id.* ¶ 40; Pl.'s Opp'n at 14.) As a result, plaintiff filed a complaint alleging that defendants have unreasonably delayed making a final decision on its petition in violation of

---

[4] FWS delegated the responsibility for overseeing the Mexican wolf reintroduction project to AMOC in 2003. (Compl. ¶ 33.) Consequently, AMOC became responsible for the five-year review required by rule 10(j). (*Id.*)

Section 555(b)[5] and Section 706(1)[6] of the APA. (Compl. ¶ 1.) To remedy the alleged unreasonable delay, plaintiff requests the Court to order defendants to issue a final decision on plaintiff's petition within 45 days. (*Id.* at 16.)

On February 8, 2007, FWS sent a letter to plaintiff regarding its 2004 petition. (Morgart Decl., Ex. 1). FWS stated that the letter represented the agency's decision regarding plaintiff's petition. (*Id.*) Furthermore, the letter provided that in response to plaintiff's petition and the five-year review, defendants have started the process to modify the 10(j) rule. (*Id.*) Defendants contend that this letter renders plaintiff's claim moot because it represents a final decision on plaintiff's petition. As a result, defendants filed their Motion [7] to Dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

### III. DISCUSSION

#### A. Legal Standard

When confronted with a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the court must "accept all of the factual allegations in [the] complaint as true." *Jerome Stevens Pharm. v. FDA.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (internal citations and quotations omitted). Accordingly, the court must make all reasonable inferences in favor of the plaintiff. *See Artis v. Greenspan*, 158 F.3d 1301, 1305-06 (D.C. Cir. 1998); *see also DL v. District of Columbia,* 450 F. Supp. 2d 11, 13 (D.D.C. 2006) ("In evaluating whether it has subject matter jurisdiction, the court must construe the complaint

---

[5] Section 55(b) of the APA provides that an agency shall conclude a matter presented to it within a reasonable time. 5 U.S.C. § 555(b) (2006).

[6] Section 706(1) of the APA provides that, "the reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1) (2006).

liberally, and give the plaintiff the benefit of all reasonable inferences.").

The court will lack subject matter jurisdiction if the defendant demonstrates that the plaintiff's claim is moot. *See DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (explaining that the federal judiciary is unable to review moot cases because a court may only exercise its power pursuant to Art. III of the Constitution if an actual case or controversy exists). The defendant's "burden is a heavy one." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). To meet this burden and demonstrate that a case is moot, the defendant must show that events have transpired which prevent the court from granting the plaintiff effective relief. *Burlington N. R.R., v. Surface Transp. Bd.*, 75 F.3d 685, 688 (D.C. Cir. 1988). Provided that the intervening events "have completely and irrevocably eradicated the effects of the alleged violation," the court will dismiss the claim. *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). If, however, the plaintiff suffers a "legally cognizable injury traceable to the alleged violations," *Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*, 88 F.3d 1191, 1207 (D.C. Cir. 1996), or if a "partial remedy" is available, *Calderon v. Moore*, 518 U.S. 149, 150 (1996), the court may not dismiss the case as moot.

    B.    **Application**

The Court finds that defendants have satisfied the heavy burden of demonstrating that plaintiff's complaint is moot. Therefore, the Court will grant defendants' motion to dismiss.

In its complaint, plaintiff requests the Court to order defendants to issue a final, judicially-reviewable decision on its petition within forty-five days as relief. (Compl. at 16.) This relief is no longer available to plaintiff because defendants' February 8, 2007 letter constituted FSW's final decision regarding plaintiff's petition. (*See* Morgart Dec., Ex. 1.) As

FSW's final decision, the letter is judicially-reviewable. Thus, the letter "completely and irrevocably eradicated the effects of the alleged violation" of Section 706(1) of the APA. *Davis*, 440 U.S. at 631. Furthermore, no other relief is sought in the complaint. As a result, a partial remedy, which would prevent plaintiff's claim from being moot, is not available. Accordingly, plaintiff no longer has a legally cognizable injury which is traceable to defendants' alleged delay, and its complaint is moot. *See Kennecott*, 88 F.3d at 1207 (stating that without an injury relating to the defendant's alleged violation, the plaintiff's complaint becomes moot).

Plaintiff argues that the letter does not render its claim moot because defendants have not instituted or proposed the modifications it requested in its petition. This argument, however, is beyond the scope of plaintiff's complaint. Plaintiff's complaint does not concern defendants' alleged failure or delay to propose or institute amendments to rule 10(j). Rather, as stated above, the complaint seeks a decision regarding plaintiff's petition. The February 8, 2007 letter is exactly what plaintiff requested in its complaint – a final, judicially-reviewable decision on plaintiff's petition. Therefore, the Court finds that the issue of whether defendants have unreasonably delayed instituting or proposing the requests of plaintiff's petition does not prevent plaintiff's claim from being moot.[7] *See Clarke v. United States*, 915 F.2d 699, 703 (D.C. Cir. 1990) (finding that a plaintiff cannot defend against a claim of mootness by asserting an injury broader than the injury alleged in the complaint).

Furthermore, plaintiff argues that the February 8, 2007 letter is not an "unequivocal" and "coherent" response to its petition as required by *In re American Rivers & Idaho Rivers United*,

---

[7] Likewise, the fact that defendants have not published any rule changes in the Federal Register does not prohibit plaintiff's claim from being moot because the issue of publishing a proposed rule change in the Federal Register is not in the complaint.

372 F.3d 413, 419 (D.C. Cir. 2004) [hereinafter *American Rivers*]. The Court, however, finds that *American Rivers* is inapposite. First, in *American Rivers*, the court reached its decision on the merits. Here, the matter before the Court is a motion to dismiss for lack of subject matter jurisdiction because intervening events rendered plaintiff's claim moot. Second, the Court is dubious of plaintiff's interpretation of *American Rivers*. The issue of mootness was never raised by the parties or addressed by the Court. Moreover, the court in *American Rivers* did not address whether a response to the plaintiff was unequivocal and coherent. Rather, the court concluded that the evidence presented to the court in the absence of a letter to the plaintiff did not constitute a coherent and unequivocal response to the plaintiff's petition. *Id.* Last, to the extent that *American Rivers* would be applicable, the facts in the record are distinguishable because, unlike in *American Rivers*, defendants have actually provided a response to plaintiff in which FWS clearly stated that it had started the rule-making process in response to the concerns in plaintiff's petition. (Morgart Decl. Ex. 1.) Therefore, the Court finds that the court's holding in *American Rivers* does not prohibit the Court from finding that the February 8, 2007 letter renders plaintiff's claim moot.

    Plaintiff's complaint requests relief in the form of a final, judicially-reviewable decision regarding its 2004 petition. On February 8, 2007, plaintiff received defendants' final, judicially-reviewable decision. The Court is therefore unable to grant plaintiff effective relief. Thus, the Court holds that plaintiff's claim is moot and grants defendants' motion to dismiss. This holding, however, does not prevent plaintiff from filing a new claim alleging unreasonable delay if defendants do not complete the rule-making process to modify the 10(j) rule within a reasonable period of time. *See In re Int'l Union, United Mine Workers of America*, 231 F.3d 51,

54-55 (D.C. Cir. 2000); *see also MCI Telecomms. Corp. v. FCC,* 627 F.2d 322, 340 (D.C. Cir. 1980) (stating that a reasonable time for agency action "encompass[es] months, occasionally a year or two, but not several years or a decade").

## VI.     CONCLUSION

For the reasons stated above, the Court concludes that defendants' Motion [7] to Dismiss shall be GRANTED.

A separate order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, August 6, 2007.